FILED
1999 MAR 12 PM 1:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HOYLE BROOME, | ) |
| Plaintiff, | ) |
| vs. | ) No. CV 97-J-1590-S |
| MEDIA GENERAL, INC., et al., | ) |
| Defendants. | ) |

ENTERED
MAR 12 1999

## MEMORANDUM OPINION

This cause comes before the court on Defendants' motion for summary judgment (doc. 34).

### I. Undisputed Material Facts

This case arose out of the acquisition of a television station, WBMG Channel 42, by Media General, Inc. ("MG"). As early as 1970, Channel 42 was owned by Park Communications, Inc. Park Communications, Inc. was owned by Mr. Roy Park, Plaintiff's uncle. Plaintiff began working at Channel 42 in 1970 and became general manager of the station in 1980. After Mr. Park's 1995 death, the station was sold to Park Acquisitions, Inc. ("Park"). Nothing about this transfer of ownership substantially affected the employment of Plaintiff. Ultimately, Park Acquisitions sold the station to MG. This acquisition was complete on or about January 7, 1997.

MG began acquisition talks with Park in or about the summer of 1996. At that

1



time, MG was simply seeking information about Park's stations in an effort to determine whether or not MG would be interested in purchasing said stations. As the talks progressed, MG decided to send teams to each of Park's stations under consideration in order to perform "due diligence" visits. The purpose of these visits was to provide MG with more specific details about each of the stations it was considering purchasing. An MG team lead by Mr. James Zimmerman made a due diligence visit to Channel 42 in September 1996. Plaintiff and Zimmerman met on that occasion. At that time, Plaintiff expressed concerns about the stability of his position after the potential MG takeover. Zimmerman told Plaintiff that MG did not have anyone waiting to take over the general manager's position at Channel 42. According to Plaintiff, Zimmerman told Plaintiff that Plaintiff's job would be secure until the end of 1997 if MG bought the station.

During the time that MG was in acquisition discussions with Park, Plaintiff was having trouble with Channel 42's News Director, a black female. Plaintiff contends that he was told by Park, and later Zimmerman, that he could not fire the News Director because of the potential that she would file a Title VII suit. Plaintiff also contends that he was told that he could not supervise the News Director. The parties agree that, by early 1997, the newsroom was in bad shape.

In January 1997, MG acquired Channel 42 and several other Park stations. Shortly thereafter, Plaintiff signed for a copy of Media General Broadcast Group's Personnel Policies and Procedures Manual. *See* Deposition of Plaintiff at 105-106 & Defendants'

Exhibit 3. In late March 1997, MG made the decision to terminate Plaintiff's employment. At that time, Plaintiff threatened to sue MG. Plaintiff filed this lawsuit in the Circuit Court of Jefferson County, Alabama on May 22, 1997 alleging state law claims. Plaintiff filed a complaint with the EEOC alleging "reverse race discrimination" on May 29, 1997. The state-court lawsuit was removed to this court on June 30, 1997. Plaintiff amended his complaint on December 18, 1997 to add his Title VII "reverse discrimination" counts. Plaintiff's final amendment to the complaint was filed on May 7, 1998 and added a count for retaliation under Title VII.

## II.   Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

3

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d

4

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 47 U.S. at 251-252.

### III. Analysis

#### A. Breach of Employment Contract

Well-established Alabama law holds that employment is terminable at-will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. *Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 310 (Ala. 1992). "[E]mployees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than 'at will.' The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied." *Id.* at 310-311 (*quoting Alabama Mills, Inc. v. Smith,* 186 So. 699, 704 (Ala. 1939)). In order to establish that an employment relationship is not "at will", a party must show: (1) a clear and unequivocal offer of lifetime employment or employment of a definite duration; (2) a hiring agent with authority to bind the principal

5

to a permanent employment contract, and (3) an employee who provided substantial consideration for the contract separate from the services to be rendered. *Hofman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987).

At the time the alleged offer of employment was made to Plaintiff by Zimmerman, MG did not own Channel 42. The statement Plaintiff considered to be an offer of employment was made by Zimmerman during a "due diligence" visit to Channel 42 in September 1996. Taking the facts in the light most favorable to Plaintiff, this statement was made by an executive of a company that was <u>thinking about</u> purchasing Channel 42. Under those circumstances, Plaintiff's assumption that such a statement was a "clear and unequivocal offer of employment" was unreasonable. It would also be unreasonable under those circumstances for Plaintiff to assume that Zimmerman had any power to bind MG to an employment agreement relating to a station it had not yet even decided to purchase.

The unreasonableness of Plaintiff's beliefs is confirmed by his own words in an interoffice memorandum dated December 9, 1996. The date of this memorandum is very telling as it is after the alleged "promise" by Zimmerman but before MG actually acquired Channel 42. In said memorandum Plaintiff states, in part:

> I am 51 years old with two daughters in college. I am not at the age nor do I have the financial foundation to allow the luxury of retirement. I have no 'golden parachute', no management agreement, and have received no retention bonus from the previous sale [of Channel 42 by Park Communications, Inc. to Park Acquisitions, Inc.]. My two year severance

> agreement ... is less than a full year's salary and has been interpreted by Park's attorney as expiring in May of '97. Nothing, is therefore, more important to me than my reputation, my good record, and my career. I *have* followed the instructions of my company and have had no unauthorized contact with Media General, but likewise; I have no contract with Media General nor formal written assurances of continued employment.
>
> I would like nothing more than to continue to manage this station for the last 14 years of my career and retire here in Birmingham.
>
> At this juncture, however, I have serious concerns about the pattern of activity from [the News Director] that has been allowed to occur for months with impunity. I am fully prepared to take any required action within the law, and pursue every legal remedy; if my career or reputation are threatened as a result....
>
> If I were dealing with ... the Park management in the future, I would not be concerned. We have a long history together, and I feel certain that [you] ... would support my position in the long run.... With ...the Park organization, I feel my reputation is intact....
>
> I am, however, a non-entity with Media General; except for a picture painted by a disgruntled employee who [knows that] ... if I had been able ... I would have terminated her immediately....
>
> Nonetheless, [the disgruntled employee] continues to operate with impunity; and I am left to consider what my response will be if I am left the ultimate victim of a continuing dual standard of ethics and operational policy.

Deposition of Plaintiff at Defendants' Exhibit 21, pp. 17-18 (emphasis original).

It is apparent from this memorandum dated December 9, 1996 that Plaintiff was concerned about the stability of his job, especially during the potential change-over from Park to MG. While Plaintiff now contends that he only meant that he had no written contract with MG, the memorandum taken as a whole indicates that Plaintiff was

7

concerned about the stability of his job. In light of Plaintiff's own words, it would be unreasonable for a jury to believe that Plaintiff was under the impression that he had a clear and unequivocal offer of lifetime employment or employment of a definite duration. According to that memorandum, Plaintiff likewise did not believe that Zimmerman had the authority to bind MG to a permanent employment contract since he is very concerned about his employment status some three months after Zimmerman's statements to Plaintiff during the "due diligence" visit.

Plaintiff having failed to make out the *prima facie* elements of an employment contract, it is unnecessary for this court's analysis to go any further on this claim. Summary Judgment is due to be granted on the breach of employment contract claim found within Count I of Plaintiff's second amended complaint. Summary judgment is not due on the remaining claim within Count I, breach of severance pay contract.

### B.     Fraud/ Misrepresentation

Plaintiff contends that this is a simple fraud count while Defendants assert that Plaintiff actually makes a claim for promissory fraud. This distinction between the two is that a claim for promissory fraud requires a showing that the promissor had the present intent to deceive at the time the promise was made. *Hearing Systems, Inc. v. Chandler*, 512 So. 2d 84, 87 (Ala. 1987). However, this distinction is unnecessary here as Plaintiff fails to make out the *prima facie* case for simple fraud/ misrepresentation.

"The critical elements of an action for fraud generally include: (a) a false

8

representation concerning an existing material fact;  (b) a representation which (1) the defendant knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge;  (c) reliance by the plaintiff on the representation and that he was deceived by it; (d) reliance which was justified under the circumstances; (e) damage to the plaintiff proximately resulting from his reliance." *First Alabama Bank v. First State Ins. Co.*, 899 F.2d 1045, 1056 (11th Cir. 1990) (citations omitted). This court finds that even if Plaintiff could establish elements (a) through (c), the Plaintiff fails to show (d), that being reliance justified under the circumstances. Based upon Plaintiff's own fears articulated in his December 9, 1996 memorandum, his reliance on Zimmerman's statements was not justified under the circumstances. (*See* discussion *supra*).

Furthermore, Plaintiff signed for the Media General Broadcast Group's Personnel Policies and Procedures Manual ("the Manual"). The Manual clearly indicated that all employment with MG was on an "at will" basis. *The Manual* at Introduction. Plaintiff points to the portion of the Manual which states "If any of the policies in the manual are in conflict with any employment agreement, the provisions of the latter shall control as to those employees who are covered by such agreements." *The Manual* at E-3. Plaintiff contends that he had a prior oral employment contract with Zimmerman and, therefore, he was not governed by the "at will" provision of the Manual. Yet, Plaintiff chooses to

ignore the last sentence of the Introduction to the Manual which states, "the employment relationship may be terminated at any time ... for any reason not expressly prohibited by law. Any ***oral statements to the contrary*** by a supervisor, department head, manager, corporate officer, or other agent of the Media General Broadcast Group ***is invalid and should not be relied upon*** by any ***prospective*** or existing ***employee***." *The Manual* at Introduction (emphasis added).

Since Plaintiff's reliance on Zimmerman's statements was not justified under the circumstances, Plaintiff fails to establish a *prima facie* case for fraud/ misrepresentation. It is unnecessary for this court's analysis to continue further on this claim. Summary Judgment is due to be granted on the fraud/ misrepresentation count -- Count II of Plaintiff's second amended complaint.

### C. *Fraud of Suppression/ Concealment*

The fraud of suppression or concealment has the same elements as the basic fraud of misrepresentation with one addition: "In order for the suppression of facts to be actionable, there must be a duty to speak." *First Alabama Bank v. First State Ins. Co.*, 899 F.2d 1045, 1056 (11th Cir. 1990). Since Plaintiff has failed to make out a *prima facie* case for the fraud of misrepresentation, the Plaintiff clearly cannot make a *prima facie* demonstration of the fraud of suppression/ concealment. (*See* discussion *supra*.)

Since Plaintiff's reliance on Zimmerman's statements was not justified under the circumstances, Plaintiff fails to establish a *prima facie* case for suppression/ concealment.

It is unnecessary for this court's analysis to go any further on this claim. Summary Judgment is due to be granted on the suppression/ concealment count -- Count III of Plaintiff's second amended complaint.

### D. Reverse Racial Discrimination

#### 1. Reduced Job Responsibilities

Plaintiff argues that his job responsibilities were reduced in violation of Title VII. Taking the facts in the light most favorable to Plaintiff, his supervisory duties over the News Director and/or the newsroom were taken away from him due to the potential threat of a Title VII claim by the News Director, a black female. Title VII's prohibition against unlawful discrimination is inapplicable to Plaintiff's claim. The only case Plaintiff produces in support of his claim is *Crowley v. Prince George's County, Maryland*, 890 F.2d 683 (4th Cir. 1989). In *Crowley*, the Plaintiff contended that "the downgrading of his position was racially motivated in that it was ordered to avoid a charge of racial discrimination by a black employee. Thus, he argue[d], his position never would have been downgraded had he not been white." *Id.* at 687. The Fourth Circuit held that such a "claim of a racially motivated adverse employment action states a cognizable cause of action under Title VII." *Ibid.*

However, *Crowley* differs from the case at bar. In *Crowley*, the black employee had already filed a civil rights complaint when the county reduced Crowley's pay. The grounds for that pending discrimination charge by the black employee was that he was

11

being treated differently than white employees, specifically the Plaintiff. Thus, the black employee in *Crowley* would have had no discrimination claim if the Plaintiff had been black.

In the instant case, no discrimination suit had been filed by the black employee in question. Taking the facts in the light most favorable to Broome, there was only the threat of a Title VII complaint by the black female News Director. It is speculation to assume that this threatened Title VII claim by the black female News Director would have been predicated upon Broome's race. And Broome does not provide evidence from which a reasonable jury could draw the inference that he was not allowed to supervise the News Director and/or the newsroom because he was white. On the contrary, the evidence shows that Plaintiff was replaced as general manager of Channel 42 by a white male who was allowed to fire the black female News Director. Thus, no reasonable inference of discrimination can be drawn from the fact that Defendant truncated Plaintiff's power to fire the black female out of fear of a Title VII action by her.

Plaintiff having failed to make a *prima facie* showing of a Title VII violation in the reduction of his job responsibilities, it is unnecessary for this court's analysis to go any further on this claim. Summary Judgment is due to be granted on the Title VII claim for reduction of job responsibilities found in Count IV of Plaintiff's second amended complaint.

2.   Termination

Plaintiff also contends that he was ultimately fired in violation of Title VII. Because Plaintiff is a white male, his claim is a "reverse race discrimination" claim. The Supreme Court has held that "Title VII prohibits racial discrimination against" whites "upon the same standards as would be applicable" to blacks. *McDonald v. Sante Fe Trail Transportation Co., et al.*, 427 U.S. 273, 280, 96 S. Ct. 2574, 2579 (1976).[1] Thus, a "reverse race discrimination" claim is to be analyzed like any other Title VII claim. *Id.*

The *prima facie* requirements of a wrongful termination claim under Title VII are: (1) Plaintiff is a member of a protected class, (2) that he was qualified for his job, (3) that he was terminated, and (4) that he was replaced by a person outside the protected class. *See Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994). This court finds that even if Plaintiff could establish elements (1) through (3), the Plaintiff fails to show (4), that being that he was replaced by a person outside the protected class. The individual who replaced Plaintiff as general manager of Channel 42 was a white male. Thus, Plaintiff fails to make out his *prima facie* case for wrongful termination under Title VII. Summary Judgment is due to be granted on the Title VII claim for wrongful

---

[1]   Despite the clear language of *McDonald*, some courts have applied a heightened standard of scrutiny to whites claiming discrimination under Title VII. However, such a heightened standard has not been endorsed by either the Supreme Court or the Eleventh Circuit. Thus, this court is obliged to apply the law under the clear standard of *McDonald* (*i.e.*, to apply Title VII to the white Plaintiff as equally as to the black Plaintiff). *See Prescott v. Independent Life and Accident Ins. Co., et al.*, 878 F. Supp. 1545, 1550 n. 5 (M.D. Ala. 1995).

termination found in Count IV of Plaintiff's second amended complaint.

### E. Retaliation

Plaintiff's next claim is that MG withheld his severance pay in retaliation for his having filed an EEOC complaint/ lawsuit. However, this court does not reach the merits of Plaintiff's retaliation claim because the claim is due to be dismissed as untimely. Title VII requires that a "charge ... be filed within one hundred and eighty days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e-5 (e)(1). Upon receiving a "right-to-sue" letter from the EEOC, an aggrieved person has ninety day within which to bring a civil action. *See* 42 U.S.C. § 2000e-5 (f)(1). A plaintiff's EEOC charge limits the scope of his lawsuit. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466-67 (5th Cir. 1970). Plaintiff was terminated on March 24, 1997. On that occasion, Zimmerman presented Plaintiff with a check for approximately $90,000. *See* Deposition of Plaintiff at p. 40 & 44. Plaintiff refused the check as the wrong amount of money. When Zimmerman asked Plaintiff for a copy of his severance contract in order to figure the correct amount, Plaintiff told Zimmerman that he did not have one in his office but would provide a copy to MG. Deposition of Plaintiff at p. 40 At that time, Plaintiff also informed Zimmerman that he thought he had a good claim for reverse race discrimination. Deposition of Plaintiff at pp. 40-41.

On March 27, 1997, Plaintiff wrote to MG inquiring about the reasons for his termination and stating the following with respect to his severance pay:

> You are, I am sure, also aware of a severence [sic] contract which I had with the predecessor corporations - Park Communications and Park Acquisitions. That contract is, of course, applicable to Media General. For your convenient reference, I enclose copies of letters dated June 28, 1994 and October 29, 1996 confirming that contract.
>
> Therefore, in addition to the explanation I have requested, please promptly confirm that Media General will honor the severance contract and confirm the details of Media General's implementation of that obligation.

*Broome letter* of March 27, 1997. On April 25, 1997, Plaintiff again wrote to MG stating:

"I have also made the reasonable request that you ... confirm your obligations under my severance contract. I am being materially prejudiced by your failure to provide this information." *Broome letter* of April 25, 1997. On May 19, 1997, MG's general counsel responded to Plaintiff's two letters and stated:

> Finally, the terms of your severance agreement were not provided to us in connection with our January 7, 1997, acquisition of Park. I also understand that, although Mr. Zimmerman asked for a copy of your severance agreement when you mentioned it at the time of your discharge, you declined to provide it.
>
> If there is no reason to overturn your discharge, Park's severance commitment will be honored, and we will forward to you the lump sum benefit, less any amounts which we are required by law to withhold for wage payments.

*Media General letter* of May 19, 1997.

Within fifty-five days, Plaintiff determined that MG was not going to pay him his severance pay at that time. *See* Deposition of Plaintiff at 166; *see also* Deposition of Plaintiff at 164-166. Plaintiff filed his EEOC charge on May 29, 1997, sixty-six days

15

after his termination and sixty-three days after his first letter to MG. By Plaintiff's own calculations, he knew that his severance pay was being withheld prior to filing his EEOC complaint. If MG was withholding Plaintiff's severance pay on May 29 it could not have been doing so in retaliation for the EEOC charge filed that day.

Although a litigant is not required to file another EEOC charge over retaliation for having filed an earlier EEOC charge, the alleged retaliation here occurred prior to Plaintiff's May 29, 1997 EEOC charge. Plaintiff's retaliation claim "involves conduct [which] occurr[ed] prior to the filing of the EEOC charge[] and thus could have been alleged in the original charge. Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards...." *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991). Because Plaintiff does not even remotely mention a claim for retaliation in his May 29, 1997 EEOC charge, that claim must be dismissed from this action. Summary judgment is due to be granted on said claim found in Count VII of Plaintiff's third amended complaint.

### F.   Interference with Severance Contract

Alternatively, Plaintiff pleads that, if MG is found not to be an "employer under Title VII and/or not a party to Plaintiff's contractual relationship," that MG tortiously interfered with a severance contract between Plaintiff and Park. *See* Second Amended Complaint at ¶¶ 59-65. When Plaintiff was terminated on March 24, 1997, he was an at-will employee of MG. Defendant MG in its letter dated May 19, 1997 confirmed that it

would honor Plaintiff's severance contract if his discharge was not overturned. It is impossible for Plaintiff to sustain a claim of "interference with contract" against MG because MG could not interfere with a contract between itself and Plaintiff. *See Joe Cooper & Associates, Inc. v. Central Life Assurance Co.*, 614 So.2d 982 (Ala.1992). Summary judgment is due to be granted on Plaintiff's "tortious interference with contract" claim found in Count VI of the second amended complaint.

### IV    Conclusion

Based upon the forgoing analysis;

It is **FOUND** by the court that no genuine issues of material fact remain as to Plaintiff's claims for (1) breach of employment contract, (2) fraud/ misrepresentation, (3) fraud of suppression/ concealment, (4) Title VII claim for reduction of job responsibilities, (5) Title VII claim for wrongful termination, (6) Title VII claim for retaliation, and (7) interference with severance contract;

It is further **FOUND** by the court that genuine issues of material fact remain only as to Plaintiff's claim for breach of contract for severance pay found within Count I of Plaintiff's second amended complaint;

It is therefore **ORDERED, ADJUDGED, and DECREED**, in accordance with the separate order this day entered, that Defendants' motion for summary judgment (doc. 34) be and hereby is **GRANTED** as to Plaintiff's claims for (1) breach of employment contract, (2) fraud/ misrepresentation, (3) fraud of suppression/ concealment, (4) Title VII

claim for reduction of job responsibilities, (5) Title VII claim for wrongful termination, (6) Title VII claim for retaliation, and (7) interference with severance contract.

**DONE and ORDERED** this the _12_ day of March, 1999.

_____
Inge P. Johnson
United States District Judge